## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **BALJIT MAINI, individually;** | ) | |
| **DR. ASHOK MAINI, individually; and** | ) | |
| **BRIAN LAWLYES, as receiver for** | ) | |
| **Full Access Healthcare, LLC,** | ) | |
| **An Illinois limited liability company,** | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| **v.** | ) | **Case No.**    **2:25-cv-2106** |
| | ) | |
| **AMANDA SPEZIA; and FULL ACCESS** | ) | |
| **CARE, LLC, an Illinois limited** | ) | |
| **liability company;** | ) | **JURY TRIAL REQUESTED** |
| | ) | |
| **Defendants.** | ) | |

## AMENDED VERIFIED COMPLAINT

NOW COMES Plaintiffs BALJIT MAINI ("Maini") individually, DR. ASHOK MAINI ("Dr. Maini"), individually, and BRIAN LAWLYES, as receiver of Full Access Healthcare, LLC, ("FAH") an Illinois limited liability company, (collectively, "Plaintiffs"), for their Amended Verified Complaint against AMANDA SPEZIA ("Spezia"), individually, and FULL ACCESS CARE, LLC, an Illinois limited liability company ("Full Access" collectively, "Defendants"), respectfully state to the Court as follows:

### JURISDICTION AND VENUE

1)    This Court has subject matter jurisdiction over this action under 28 U.S.C. §§1331 and 1367. The Court has federal question jurisdiction because Plaintiffs assert claims under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1836, *et. seq.*

2)    The doctrine of "pendent party jurisdiction" allows supplemental jurisdiction for Plaintiffs, Maini and Dr. Maini, even though they do not independently have federal question or

diversity jurisdiction because the state law claims are closely related to the federal question claim of another plaintiff and share a common factual basis. See *Hudgins Moving & Storage Co., Inc. v. American Exp. Co.*, 292 F.Supp.2d 991 (2003). In the case at hand, this case is about the start-up and collapse of the closely-held business Full Access Healthcare, LLC, which resulted in Defendant Spezia taking all of the trade secrets and intangible assets to a new similarly-named LLC owned only by her.

3)      The Court has supplemental jurisdiction over all claims for which the Court lacks original jurisdiction because Plaintiffs claims arise out of the same common nucleus of operative facts, namely, Defendants improper and illegal actions immediately before and after Spezia's separation from FAH.

3)      This Court has general jurisdiction over Spezia as she is an individual domiciled in the State of Illinois.

4)      This Court has general personal jurisdiction over Full Access as it is an entity: 1) formed under the laws of the State of Illinois, 2) maintain its principal place of business in the State of Illinois, 3) regularly conduct business in the State of Illinois.

5)      Venue is proper in this District and Division pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to this action took place in this District and Division, the Defendants are all domiciled in this District and Division, Full Access's principal place of business is in this District and Division, and the harm is felt in this District and Division.

**THE PARTIES**

6)    FAH is a judicially dissolved Illinois limited liability company which had its principal place of business located at 610 N. Gilbert Street, Suite A, Danville, Illinois, 61832. FAH was at all times material hereto, authorized to conduct business in the State of Illinois.

7)    Maini is an individual who is an Illinois citizen residing in the Northern District of Illinois.

8)    Dr. Maini is an individual who is an Illinois citizen residing in the Northern District of Illinois.

9)    Spezia is an individual who is an Illinois citizen residing in the Central District of Illinois.

10)    Full Access is an Illinois limited liability company with its principal place of business located at 610 N. Gilbert Street, Suite A, Danville, Illinois, 61832.

11)    Brian Lawlyes is the receiver appointed in the case styled *Amanda Spezia v. Full Access Healthcare, LLC and Baljit Maini*, filed in the Circuit Court of the Fifth Judicial Circuit of Illinois, Vermilion County, Danville, Illinois, Case No. 2024MR000079 to wind-down the business of FAH.


**FACTS**

13)    Spezia is a nurse practitioner who worked with Dr. Maini and with whom she was best friends during the 4 years preceding May, 2023.

14)    In May, 2023, Spezia lost her job at OSF Hospital.  After losing her job, Spezia approached Dr. Maini to help her achieve her dream of opening a healthcare clinic.  Dr. Maini

agreed to assist her, but because of possible conflicts between him and the local hospital, Spezia agreed Dr. Maini's investment in his father Maini's name.

15)    Beginning on or about May 15, 2023, Dr. Maini was actively involved with Spezia to find a location for the clinic, researching billing and case management software, and opening a bank account. Dr. Maini also participated in interviewing and hiring the clinic's staff.

16)    Spezia and Maini formed FAH on June 13, 2023, in the State of Illinois as a domestic manager-managed limited liability company. By Spezia's designed, FAH was to offer high-quality medical services in the community consisting of a walk-in family medical clinic, weight loss, Botox and physicals.

17)    Maini and Spezia entered into an Operating Agreement on or about the 13th day of June, 2023, a true and accurate copy of which is attached hereto as Exhibit "A." Pursuant to the Operating Agreement, from inception until October 18, 2024, Spezia served as a member of FAH with a 51% share and Maini held the other 49%.

18)    In or around June, 2023, using a real estate agent, Dr. Maini and Spezia found a location from which FAH could operate. Spezia and her ex-husband personally guaranteed the lease. The city subsidized the location's buildout.

19)    Between June, 2023 and October, 2023, Dr. Maini was instrumental in setting up FAH's case management system for medical notes, chose the billing company and accounting company, chose the weight loss company, created the weight loss and Botox protocols, and chose the lab company. Through his experience as a physician, he was aware how such clinics were being set up and the business model other similarly situated clinics were demonstrating success. Spezia had no such experience and was relying on Dr. Maini for his input. On November 1, 2023, FAH opened for business.

20)    Once the clinic opened, Dr. Maini worked Monday through Friday from 1:00 p.m. to 5:00 p.m. at FAH every other week.  Beginning in August, 2024, Dr. Maini worked approximately 20 hours every other week.  Dr. Maini also conducted the interviews for and hired the nurse and secretary for the business, prepared and submitted FAH's payroll, acquired new patients, earned a significant amount of revenue for the clinic, and performed services the clinic could not have otherwise performed.  Dr. Maini, however, was not compensated fairly for the use of his business model, the work he put in, and the revenues he caused to be earned by the business, and as such has agreed with his father to share in the financial aspects of the business and the claim herein.

21)    Once the clinic was all set-up and opened, thanks to Dr. Maini, Spezia possessed the necessary licensing authority to perform most functions in the clinic.  Her need for Dr. Maini was no longer as necessary as it was prior to FAH's opening.

22)    On or around August, 2024, Spezia received a settlement payout from a lawsuit.  It was around this time, Spezia started to create problems with Maini and Dr. Maini in the form of fights and unnecessary drama.

23)    To the information and belief of Dr. Maini, Spezia's intent was to create dissension so Maini and Dr. Maini would divest themselves of their interest in FAH, leaving Spezia with a thriving business for herself.

24)    Eventually, Spezia offered Dr. Maini and Maini $55,000 to buy Dr. Maini and Maini out of FAH, claiming they could not get along.  Dr. Maini rejected the offer.

25)    On October 10, 2024, Spezia, without the knowledge or consent of the Plaintiffs, formed Full Access as an Illinois limited liability company with its principal place of business at the same location as FAH.

26)    On October 18, 2024, Spezia resigned from FAH and immediately began conducting business as Full Access, usurping all of FAH's assets, trade secrets, and dispossessing Maini and Dr. Maini from their original interests.

27)    Since then, Spezia continues to operate Full Access using all of FAH's assets, including, but not limited to, its premises, trade name, lease, equipment, vendors, customers, records, protocols, licenses, healthcare insurance relationships, goodwill, telephone numbers, know how, licenses, etc. ("FAH Assets") without compensating either FAH, Maini or Dr. Maini.

28)    All conditions precedent have been performed, waived, or excused.

## COUNT I:

## VIOLATION OF THE FEDERAL DEFEND TRADE SECRETS ACT
## BY BRIAN LAWLYES AS RECEIVER OF FULL ACCESS HEALTHCARE, LLC
## AGAINST SPEZIA AND FULL ACCESS

29)    Plaintiff Brian Lawlyes as receiver of Full Access Healthcare, LLC repeats and realleges paragraphs 1 through 28 as if set forth fully herein.

30)    The Defend Trade Secrets Act (18 U.S.C. §1832) which amended the Economic Espionage Act to add a federal civil cause of action, among other things, defines "trade secret" to include all forms and types of financial, business or economic information, including patterns, plans, protocols, compilations, methods, techniques, processes, procedures or programs, if (A) the owner thereof has taken reasonable measures to keep such information secret, and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public.

31)    During the course of her affiliation with FAH, Spezia was provided access to all of FAH's trade secrets, including, but not limited to, its patient list, vendor list, case management

software with personal identifiable information as to each patient, including insurance information, protocols, and financial records.

32)     Such trade secrets were developed by Dr. Maini for the ownership of, benefit of, and maintained by, FAH at great time, cost and expense, and were maintained on password protected networks accessible only by certain FAH employees with need to use such information.

33)     FAH's trade secrets are not available to the general public and are closely guarded. FAH kept such information strictly confidential in order to maintain a competitive advantage with other clinics and hospitals in the community.

34)     FAH derived independent economic value from the trade secrets and confidential information that were entrusted to Spezia; these secrets are not generally known or readily ascertainable by proper means by other persons who can obtain economic value from their disclosure and use, and the information is the subject of significant efforts to maintain its secrecy.

35)     FAH's trade secrets, including the information identified herein, are trade secrets under the DTSA, 18 U.S.C. § 1832, *et. seq.*, because FAH derived independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy.

36)     On information and belief of Dr. Maini, Spezia and Full Access acquired FAH's trade secrets by improper means and without authorization. On information and belief of Dr. Maini, Spezia and Full Access have failed to return or destroy FAH's trade secrets and are using such trade secrets in connection with Spezia's and Full Access' efforts to operate a competitive business.

37)     On information and belief of Dr. Maini, Spezia and Full Access have used, are using, and will continue to use, FAH's confidential information and trade secrets for their financial benefit and to the Plaintiffs' detriment.

38)     Spezia and Full Access knew or should have known that the information, as described herein, 1) was confidential, 2) was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; 3) was developed or acquired by FAH at great expense and effort, 4) was maintained as confidential and is not generally available to the public and FAH's competitors, 5) would provide significant benefit to individuals seeking to compete with or harm FAH and 6) is critical to FAH's ability to conduct its business successfully.

39)     The information that Spezia and Full Access have misappropriated relate to FAH, which involve services that are utilized throughout interstate commerce.

40)     Spezia and Full Access have been and will further be unjustly enriched by the misappropriation of FAH's trade secrets and confidential information, and, unless restrained, will continue to use, divulge, inevitably disclose, acquire and/or otherwise misappropriate FAH's trade secrets and confidential information.

41)     On information and belief of Dr. Maini, Spezia's and Full Access' actual misappropriation has been willful and malicious.

42)     As a result of the actual misappropriation of FAH's trade secrets and confidential information, Plaintiffs have suffered and will continue to suffer with loss of business expectancies, customers, employees, trade secrets and goodwill in amounts which may be impossible to determine, unless Spezia and Full Access are enjoined and restrained by order of the Court.

43)     In addition, Plaintiffs seek actual, incidental, compensatory, consequential damages, along with reasonable attorneys' fees and costs in an amount to be determined at trial.

44)    As an actual and proximate result of Spezia's and Full Access' conduct, as alleged in this claim for relief, Plaintiffs have suffered actual and consequential damages.

45)    As a further proximate result of Spezia's and Full Access' wrongful conduct, Plaintiffs have been injured irreparably and otherwise, and is threatened with additional and ongoing injuries.

46)    Full Access is Spezia's alter ego that she purposefully set up to facilitate and undertake the wrongful actions described herein.

47)    Full Access should be liable and enjoined from continuing any of these activities.

WHEREFORE, the Plaintiff, Brian Lawlyes, as receiver of Full Access Healthcare, LLC prays this Court enter judgment in his favor and against Spezia and Full Access as follows:

a) an temporary restraining order, preliminary injunction, and permanent injunction against the Defendants requiring them to 1) abstain from further violations of the Federal Defend Trade Secrets Act, 2) cease doing work for any client that had been a customer of FAH, and 3) all funds received from former FAH clients be placed in a trust account pending a final decree in this case;

b) for actual damages suffered by the Plaintiffs;

c)  for pre-judgment interest;

d) for attorney's fees and costs of suit; and

e) for other relief the Court deems appropriate;


## COUNT II:

## BREACH OF FIDUCIARY DUTY BY MAINI AND DR. MAINI AGAINST SPEZIA

48)    Plaintiffs, Maini and Dr. Maini, repeat and reallege paragraphs 1 through 28 as if set forth fully herein.

49)    Spezia, as a manager of FAH, owed a fiduciary duty to Maini, in his role as member of FAH, and Dr. Maini, as a culmination of the interests described herein.

50)    Such fiduciary duties exist both before and after Spezia's departure from the Company.

51)    Spezia breached her fiduciary duties to Maini and Dr. Maini prior to her resignation by:

A) After making the decision to leave FAH, she concealed her intentions from Maini and Dr. Maini which enabled her to: (a) learn additional confidential information from the company and its managers; (b) further exploit the property of the Plaintiffs; c) obtain an appraisal of FAH's business and operations; d) meet with her attorney and other advisors to prepare for her new venture; e) put herself in a position with FAH's employees to convert them to her new venture; f) identify and cultivate prospective clients that could be signed up by her new venture; and g) take other actions to prepare for the start of her new venture that are still being investigated.

B) Usurping FAH's trade secrets, assets, operating space, telephone number, website, insurance identification number, contract term dates, pricing data, and other customer information.

C) Usurping FAH's prospective customer list, proposed pricing data, and other prospective customer information;

D) Allowing appointments to be set up with prospective or existing customers past her resignation date in which she knew she could take after leaving.

52)    All such actions were intentionally designed so that Spezia could immediately convert FAH into Full Access and have her business up and running after resigning as an FAH

manager, as well as give as little warning to Maini and Dr. Maini as possible that might enable them to enact counter-measures to protect FAH and its intangible property and their rights.

53)    Spezia's fiduciary duties did not end at the time she resigned her position as Manager.  Spezia's fiduciary duties to Plaintiffs continue to this day.

54)    Spezia breached her fiduciary duties after leaving FAH by converting its asserts to Full Access, using FAH's confidential information and Property she obtained while at FAH:

A) She immediately undertook an effort to have the employees she supervised at FAH terminate their employment and work at Full Access. She was able to shortcut her search for employees and enhance any offers to them by using the names, backgrounds, salary history.  By short-cutting the normal search, it is believed her intentions were to quickly dismantle FAH's ability to provide service to its patients, enhancing her ability to pitch to FAH's patients that they would be better off at Full Access;

B) She immediately undertook an effort, using the patient names, backgrounds, pricing data and other patient information, to transfer FAH's patients to Full Access;

C)  She immediately undertook an effort, using the prospective patient names, backgrounds, prospective pricing data and other customer information to have FAH's prospective patients sign-up with Full Access;

D) She utilized the appointments and engagements set for her while at FAH to convert patients and prospective patients to Full Access;

E)  After resigning her manager position, she wrongfully held herself out as FAH's agent and effectuated a transfer of FAH's telephone number to Full Access; and

F) Upon information and belief of Dr. Maini, she assisted patients in terminating their treatments and medical services with FAH to Full Access.

55)    These wrongful actions have caused the following damages to FAH:

A) The Defendants have caused numerous patients to transfer their medical care and treatment to Full Access;

B) The Defendants have caused two employees to terminate their employment with FAH and are now working for Full Access;

C) The Defendants have caused the Plaintiffs to incur additional labor costs both on a short term and long-term basis to mitigate the damages caused by Defendants' wrongful actions;

D) The Defendants have caused the Plaintiffs to not receive prospective patient calls due to the theft of FAH's phone number and the wrongful taking of its business model and other intangible intellectual property;

E) FAH and its Managers/Members have lost business due to the immediate actions and attention required to mitigate damages caused by the Defendants;

F) FAH has lost a significant amount of money in its valuation as a going concern;

G) The Plaintiffs have had to institute this legal action to collect damages due to the wrongful refusal of the Defendants to pay the same.  As a result, the Plaintiffs have suffered a cost related to the time value of money at its applicable borrowing rate;

H)  The Plaintiffs have been required to hire attorneys to prosecute this claim, as well as incur other costs related to the lawsuit; and

I)  Additional Damages either unknown or still accumulating.

56)    The Defendants' wrongful acts are characterized by wantonness, malice, oppression and other circumstances of aggravation.  The pattern of conduct by the Defendants was motivated by more than mere ignorance or oversight, but by personal gain.

57)     As such, the Defendants should pay punitive damages to the Plaintiffs as outlined in *Estate of Wernick*, 127 Ill.2d 61, 525 N.E.2d 876 (1989);

WHEREFORE, Maini and Dr. Maini pray this Court enter judgment in their favor and against the Defendants Spezia and Full Access as follows:

a) an temporary restraining order, preliminary injunction, and permanent injunction against the Defendants requiring them to 1) abstain from further violations of Spezia's fiduciary duties to the Plaintiffs, 2) cease doing work for any client that had been a customer of FAH and 3) all funds received from former FAH clients be placed in a trust account pending a final decree in this case;

b)  for actual damages suffered by the Plaintiffs;

c)  for punitive damages in an amount to be determined;

d)  for interest;

e) for attorney's fees and costs of suit;

f) for other relief the Court deems appropriate;

## COUNT III:
## BREACH OF ILLINOIS TRADE SECRETS ACT
## BY BRIAN LAWLYES, AS RECEIVER OF FULL ACCESS HEALTHCARE, LLC
## AGAINST SPEZIA AND FULL ACCESS

58)     Plaintiff, Brian Lawlyes, as receiver of Full Access Healthcare, LLC, repeats and realleges paragraphs 1 through 28 as if set forth fully herein.

59)     Spezia acquired FAH's trade secrets by improper means, namely misappropriating by converting the trade secrets after her authority was terminated.

60)     Full Access also acquired FAH's trade secrets referenced herein by improper means, namely by receiving the trade secrets from unauthorized party, Spezia.

61)     Spezia and Full Access used the information without FAH's consent.

62)     By using the information, Spezia and Full Access have caused injury to Plaintiffs. These wrongful actions have caused the following damages to Plaintiffs:

A) The Defendants have caused at numerous patients to transfer their medical care and treatment to Full Access;

B) The Defendants have caused two employees to terminate their employment with FAH and are now working for Full Access

C) The Defendants have caused the Plaintiffs to incur additional labor costs both on a short term and long term basis to mitigate the damages caused by Defendants' wrongful actions;

D) The Defendants have caused the Plaintiffs to not receive prospective patient calls due to the usurping of FAH's phone number and the wrongful taking of its business model and other intangible intellectual property;

E) The Plaintiff and its Managers/Members have lost business due to the immediate actions and attention required to mitigate damages caused by the Defendants;

F) FAH has lost a significant amount of money in its valuation as a going concern;

G) The Plaintiffs have had to institute this legal action to collect damages due to the wrongful refusal of the Defendants to pay the same.  As a result, the Plaintiffs have suffered a cost related to the time value of money at its applicable borrowing rate;

H)  The Plaintiffs have been required to hire attorneys to prosecute this claim, as well as incur other costs related to the lawsuit; and

I)  Additional Damages either unknown or still accumulating.

63)     The Defendants' wrongful acts are characterized by wantonness, malice, oppression and other circumstances of aggravation.  The pattern of conduct by the Defendants was motivated by more than mere ignorance or oversight, but by personal gain.

WHEREFORE, the Plaintiff, Brian Lawlyes, in his capacity as receiver of Full Access Healthcare, LLC prays this Court enter judgment in his favor and against the Defendants Spezia and Full Access, as follows:

a) a temporary restraining order, preliminary injunction, and permanent injunction against the Defendants requiring them to 1) abstain from further violations of the Illinois Trade Secrets Act, 2) cease doing work for any client that had been a customer of FAH, and 3) all funds received from former FAH clients be placed in a trust account pending a final decree in this case;

b)  for actual damages suffered by the Plaintiffs;

c)  for punitive damages in an amount to be determined;

d)  for interest;

e) for attorney's fees and costs of suit;

f) for other relief the Court deems appropriate;


**COUNT IV:**

**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
BY BRIAN LAWLYES, AS RECEIVER OF FULL ACCESS HEALTHCARE, LLC,
AGAINST SPEZIA AND FULL ACCESS**

64)     Brian Lawlyes, as receiver of Full Access Healthcare, LLC, repeats and reallege paragraphs 1 through 28 as if set forth fully herein.

65)    FAH had valid and enforceable contracts with its patients, insurance providers, and vendors that Spezia and Full Access have either attempted to appropriate to themselves or have appropriated to themselves.

66)    Prior to any dates of termination, Plaintiffs had performed the obligations under the contracts and had a reasonable basis to receive the benefits described therein.

67)    Spezia, Maini and Dr. Maini had prepared and/or executed most of the contracts for FAH's patients, insurance providers and vendors while at FAH.  More specifically, Spezia was aware of all the contracts.  Full Access, through the knowledge of its owner/manager Spezia, also had the same knowledge.

68)    Defendants intentionally and without legal justification induced a breach of the contracts, thereby interfering with FAH's rights.

69)  The contracts were, in fact, subsequently terminated with FAH.

70)    As a result of Defendants' wrongful conduct and the resulting terminations of the contracts, the Plaintiffs have suffered damages, and are suffering ongoing damages.

WHEREFORE, Brian Lawlyes, as receiver of Full Access Healthcare, LLC prays this Court enter judgment in his favor and against the Defendants Spezia and Full Access, as follows:

a) for actual damages suffered by the Plaintiff;

b)  for punitive damages in an amount to be determined;

c)  for interest;

d) for attorney's fees and costs of suit; and

e) for other relief the Court deems appropriate.

## COUNT V:

## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST SPEZIA AND FULL ACCESS

71)     Brian Lawlyes, in his capacity as receiver for Full Access Healthcare, LLC repeats and reallege paragraphs 1 through 28 as if set forth fully herein.

72)     FAH reasonably expected to enter into a valid business relationship with the businesses described on its confidential patient, insurance provider, and vendor tracking lists.

73)     Defendants had knowledge of FAH's expectancy.

74)     Defendants intentionally and unjustifiably interfered with FAH's expectancy by directly and indirectly encouraging the potential patients, insurance providers and vendors to convert their business to Full Access and by the other acts described herein.

75)     As a result of Defendants' interference, FAH failed to realize its expectancy on these customers.

76)     Defendants' interference with FAH's expectancy was willful, wanton and knowing.

77)     As a result of Defendants' wrongful interference with FAH's expectancy, FAH has suffered damages in an amount to be determined through discovery and at the time of trial;

WHEREFORE, Brian Lawlyes, in his capacity as receiver of Full Access Healthcare, LLC prays this Court enter judgment in his favor and against the Defendants Spezia and Full Access, as follows:

a) for actual damages suffered by the Plaintiff;

b)  for punitive damages in an amount to be determined;

c)  for interest;

d) for attorney's fees and costs of suit; and

e) for other relief the Court deems appropriate.

## COUNT VI:

## CONVERSION BY BRIAN LAWLYES, AS RECEIVER OF FULL ACCESS HEALTHCARE, LLC, AGAINST SPEZIA AND FULL ACCESS

78)    Plaintiff, Brian Lawlyes, in his capacity as receiver of Full Access Healthcare, LLC, repeats and reallege paragraphs 1 through 28 as if set forth fully herein.

79)    Spezia and Full Access's unauthorized usage of the FAH Assets constitutes conversion on the part of Spezia and Full Access.

80)    At all times, Spezia and Full Access have acted in bad faith, oppressively and maliciously towards the Plaintiff, FAH, with the intent to injure the Plaintiff, thereby entitling punitive damages against them.

81)    As a direct and proximate result of the Defendants' conversion, the Plaintiff has suffered:

A) The Defendants have caused at numerous patients to transfer their medical care and treatment to Full Access;

B) The Defendants have caused two employees to terminate their employment with FAH and are now working for Full Access

C) The Defendants have caused the Plaintiffs to incur additional labor costs both on a short term and long term basis to mitigate the damages caused by Defendants' wrongful actions;

D) The Defendants have caused the Plaintiffs to not receive prospective patient calls due to the usurping of FAH's phone number;

E) The Plaintiff and its Managers/Members have lost business due to the immediate actions and attention required to mitigate damages caused by the Defendants;

F) FAH has lost a significant amount of money in its valuation as a going concern;

G) The Plaintiffs have had to institute this legal action to collect damages due to the wrongful refusal of the Defendants to pay the same. As a result, the Plaintiffs have suffered a cost related to the time value of money at its applicable borrowing rate;

H) The Plaintiffs have been required to hire attorneys to prosecute this claim, as well as incur other costs related to the lawsuit; and

I) Additional Damages either unknown or still accumulating.

WHEREFORE, Brian Lawlyes, in his capacity as receiver of Full Access Healthcare, LLC, prays this Court enter judgment in his favor and against the Defendants Spezia and Full Access, as follows:

a) for actual damages suffered by the Plaintiff;

b) for punitive damages in an amount to be determined;

c) for interest;

d) for attorney's fees and costs of suit; and

e) for other relief the Court deems appropriate.

## COUNT VII:

## BREACH OF CONTRACT BY BALJIT MAINI
## AGAINST SPEZIA

82)    Plaintiff, Baljit Maini, repeats and reallege paragraphs 1 through 28 as if set forth fully herein.

83)  The Operating Agreement attached hereto as Exhibit A was a valid contract under the laws of the State of Illinois.

84)  The members had a general duty of good faith and fair dealing in the performance of the contract.

85)  The actions taken by Spezia as referenced herein were not performed in good faith or fair dealing to Maini.

86)  Article IV of the Operating Agreement required profits to be split 49% to Maini and 51% to Spezia.

87)    Through Spezia's actions referenced herein, Maini was shorted profits in an amount still to be determined.

88)    The parties agreed in paragraph 5.1 that Baljit Maini would be the chief executive officer of the Company and had general overall supervision of the business and affairs of the Company.

89)    Spezia, taking the unilateral actions referenced herein with the assets of Full Access Healthcare, LLC was a breach of the agreement that Baljit Maini would have general supervision of the business and affairs of the Company.

90)  Paragraph 6.5 of the Operating Agreement required Spezia to have a duty of undivided loyalty to the Company in all matters affecting the Company's interests.

91)  The transfer of the assets of the company to her own LLC and the actions taken in the planning for and the closing down of the business were in violation of her duty of loyalty to the Company as promised to Maini.

92)  Maini was brought into the state court lawsuit due to the wrongful actions of Spezia. Spezia agreed in Paragraph 6.3 that the Company would indemnify Maini in the event that he was brought into any action due to being a member of the Company.  Spezia agreed that the Company should fund the indemnification obligations to such extent as the Managers may from time to time deem proper.

93)  Through indemnification and pursuant to Paragraph 6.9 that requires reimbursement for expenses reasonably incurred in the performance of his duty, Maini should be reimbursed his reasonable attorneys fees and costs.

WHEREFORE, Baljit Maini prays this Court enter judgment in his favor and against Defendant Spezia, as follows:

a) for damages suffered by the Plaintiff;

b) for attorney's fees and costs of suit; and

c) for other relief the Court deems appropriate.

Respectfully Submitted,

Bartell Powell LLP

/s/ Jason S. Bartell
Jason S. Bartell, a partner of the firm

ATTORNEYS FOR DR. ASHOK MAINI
and BALJIT MAINI
Bartell Powell LLP
3015A Village Office Place
Champaign, IL  61822
(217) 352-5900
Email: jbartell@bartellpowell.com


Brian Lawlyes, in his capacity as receiver of
Full Access Healthcare, LLC, an Illinois
limited liability company

/s/ Brian Lawlyes
Brian Lawlyes, Attorney at Law
Acton & Snyder, LLP
220 N. Vermilion St.
Danville, IL 61832
(217)442-0350
brian@acton-snyder.com

## **VERIFICATION**

I, Ashok Maini, verify under penalty of perjury that I have read the above Complaint and its contents.  I also verify that, to the best of my knowledge and recollection, the facts stated in the Complaint are true and correct.

Executed this 11th day of August, 2025                    /s/ Ashok Maini